## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| RACHAEL SWANSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:23-cv-00831-TWP-TAB |
| | ) | |
| LILLY USA, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON DEFENDANT'S MOTION TO DISMISS

This matter is before the Court on Defendant Lilly USA, LLC's ("Lilly") Motion to Dismiss Plaintiff's Amended Complaint (Filing No. 23).  Imbedded in Lilly's brief is a motion for judgment on the pleadings (Filing No. 24 at 21).  Plaintiff Rachel Swanson ("Swanson") initiated this action after she was terminated from Lilly for refusing to receive the COVID-19 vaccine on medical and religious grounds.  She alleges in her Amended Complaint (Filing No. 15) that she was wrongfully terminated, and Lilly violated the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Age Discrimination in Employment Act of 1967 ("ADEA").  For the following reasons, Lilly's Motion is **granted in part and denied in part.**

## I.      BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the Amended Complaint and draws all inferences in favor of Swanson as the non-moving party.  *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).  In their briefs, the parties "dispute" several facts about the COVID-19 pandemic, including the number of Americans who tragically died from COVID-19.  However, none of these "disputed" facts is relevant to Lilly's Motion to Dismiss, so the Court will not mention them here.

A.      <u>**Lilly's Early Hiring Plan**</u>

Swanson, born in 1971, is a practicing Christian Baptist.  She was hired by Lilly in 1998 and worked for Lilly until she was terminated in 2021 at the age of 50.  ([Filing No. 15 at ¶¶ 10](), 11, 55.)  Her final position with Lilly was as an Executive Sales Representative in the Diabetes Division.  *Id.* at ¶ 11.

In 2017, Lilly expressed a desire to get rid of older employees in its sales workforce and began to shift its hiring practices to target millennials.  *Id.* at ¶ 46, 51.  During a Town Hall, Lilly's Senior Vice President for Human Resources and Diversity made a presentation in which he recognized that Lilly's work population was skewed towards older generations and had 20% less millennials than the American workforce.  *Id.* at ¶¶ 47, 48.  To combat this, he announced the need for more millennials, and stated that Lilly would have a goal of 40% "Early Career" hiring.  *Id.* at ¶ 50.

In 2019, Swanson interviewed for a neuroscience position, but was denied the position, and a substantially younger individual was hired instead.  *Id.* at ¶ 52.  In 2020, Swanson interviewed for a different position and was denied that position, and again, a younger individual was hired instead.  *Id.*  Although Lilly continued to hire older employees, it was at a significantly disproportionate rate than its past hiring rates and the national rate.  *Id.* at ¶ 53.  Lilly also implemented policies that forced older employees out which allowed them to replace those employees with younger individuals.  *Id.* at ¶ 54, 55.

B.      <u>**Lilly's Covid-19 Vaccine Mandate**</u>

On August 12, 2021, Lilly enacted a Covid-19 Vaccine Mandate ("Mandate").  *Id.* at ¶ 16.  All employees were required to submit proof of vaccination or have an approved exemption by November 15, 2021.  *See id.* at ¶¶ 16, 18.  Lilly created a process for religious and medical

exemptions. *Id.* at ¶ 16.  In a "Frequently Asked Questions" bulletin, Lilly stated "all medical and religious accommodation requests were required to be submitted by September 10."  *Id.* at ¶ 30; *see also id.* at ¶ 18 (posing question concerning a request for an accommodation submitted "by the September 10 deadline").  Lilly also stated that "decisions for both religious and medical accommodation requests were communicated by September 30."  *Id.* at ¶ 18.  Employees who worked in alleged "customer facing roles" were granted "temporary accommodations" and were told to apply to alternative, non-customer facing roles before November 15, 2021.  *Id.* at ¶ 44.  Any employee who did not provide proof of vaccination or did not have an approved religious or medical accommodation was to be separated from the company on November 16, 2021. *Id.* at ¶ 18.

## C.    Swanson's Accommodation Request and Termination

On September 9, 2021, Swanson submitted a medical accommodation request.[1]  *Id.* at ¶ 26.  The request stated:

a.    Swanson should not receive one of the vaccines due to a prior significant adverse reaction to the influenza vaccine;

b.    Receiving one of the covid vaccines could harm Swanson due to her medical history; and

c.    If Swanson continued to wear PPE she would continue to stay healthy and free from infection in her current role with Defendant.

*Id.*  After receiving the flu vaccine in 2015, Swanson experienced "tingling, numbness, and then pain followed by the inability to use her hands, arms, and legs."  *Id.* at ¶ 20.  She was diagnosed with bilateral carpal tunnel syndrome, bilateral shoulder pain and cervical muscle pain.  *Id.*  Swanson also suffered from impaired thinking, talking, nausea, gastrointestinal issues, heart

---

[1] In the Amended Complaint, the request is referred to as a "disability accommodation."  In line with the Mandate, which only allowed for religious or medical exemptions, the Court will refer to this request as a "medical accommodation" request throughout the Order.

palpitations, extreme fatigue, excruciating pain, and facial nerve pain throughout the left side of her face.  *Id.* at ¶ 21.

Swanson has lived with these disabilities for over eight years.  *Id.* at ¶ 23.  Her disabilities substantially limited her ability to think, be active, talk, interact with others, and weakened her immune system.  *Id.* at ¶ 24.  Nevertheless, Swanson was still able to meet the essential functions of her job and routinely met or exceeded Lilly's legitimate performance expectations.  *Id.* at ¶ 25.

On September 16, 2021, Lilly requested that Swanson's medical provider clarify her symptoms and medical condition by September 22, 2021.  *Id.* at ¶ 27.  Swanson did not respond by September 22, 2021 because she was on vacation and missed the email.  *Id.* at ¶ 28.  On September 27, 2021, Swanson asked Lilly what additional information was needed, *id.* at ¶ 28, and Lilly responded on September 28, 2021 that it needed to know "what symptoms were experienced at the time of adverse reaction to [her] previous flu vaccine."  *Id.* at ¶ 29.  The information requested was already provided in her September 9, 2021 medical accommodation request.  *Id.*

On October 6, 2021, Lilly denied Swanson's medical accommodation request stating that "there are very few scenarios" that permitted a medical accommodation. *Id.* at ¶ 31. Swanson then spoke to her supervisor Anu McFreen ("McFreen") about submitting a religious accommodation request since the Covid vaccine used aborted fetal cells.  *Id.* at ¶ 32.  McFreen explained to Swanson that "because she submitted a religious accommodation beyond the deadline it would be denied".  *Id.* at ¶ 33.  McFreen also explained that even if Swanson had "timely submitted a religious accommodation, it would not have mattered because Lilly was not going to allow anyone with an exemption to remain in [her] current position." *Id.*

On or about October 21, 2021, Swanson submitted an appeal to Lilly concerning the medical accommodation request she submitted and offered to provide additional information if

needed. *Id.* at ¶ 34. On or about October 27, 2021, Lilly reiterated its denial. *Id.* at ¶ 35. Then, in November of 2021, Swanson was diagnosed with Celiac disease. *Id.* at ¶ 36. Swanson informed Lilly that she had a follow up appointment with her medical provider and asked what documents needed to be provided for Lilly to approve her accommodation request. *Id.* at ¶ 39. On November 8, 2021, Lilly responded and reiterated, again, that her accommodation request had been denied. *Id.* at ¶ 40. On November 9, 2021, Swanson informed Lilly that her medical provider had her consent to speak with Lilly and answer all questions concerning her disability. *Id.* at ¶ 41. Lilly chose not to speak with Swanson's medical provider and denied her accommodation request. *Id.* at ¶ 43. Swanson was not given an opportunity to apply for an alternative position that could accommodate her disability or religious beliefs. *Id.* at ¶ 45.

Throughout this time, Swanson complied with Lilly's Covid protocols, which included "proof of antibodies, mask protocols and daily or weekly testing for COVID-19." *Id.* at ¶ 56. Swanson was 50 years old at the time of her termination and was replaced with a younger individual. *Id.* at ¶ 55.

## II.    LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski v. Cnty. of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court explained that the complaint must allege facts that are "enough to raise a

right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009). The allegations must "give the defendant fair notice of what the… claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment after the parties have filed a complaint and an answer. Rule 12(c) motions are analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). *Pisciotta v. Old Nat'l Bancorp.*, 499 F.3d 629, 633 (7th Cir. 2007); *Frey v. Bank One,* 91 F.3d 45, 46 (7th Cir. 1996). The complaint must allege facts that are "enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.* Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (internal citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Like a Rule 12(b)(6) motion, the court will grant a Rule 12(c) motion only if "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (quoting *Craigs, Inc. v. Gen. Elec. Capital Corp.*, 12 F.3d 686, 688 (7th Cir. 1993)).  The factual allegations in the complaint are viewed in a light most favorable to the non-moving party; however, the court is "not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law." *Id.* (quoting *R.J.R. Serv., Inc. v. Aetna Cas. & Sur. Co.*, 895 F.2d 279, 281 (7th Cir. 1989)).  "As the title of the rule implies, Rule 12(c) permits a judgment based on the pleadings alone. . . . The pleadings include the complaint, the answer, and any written instruments attached as exhibits." *Id.* (internal citations omitted).

## III.    DISCUSSION

Swanson brings three claims in her Amended Complaint. Count 1: Disability Discrimination; Count 2: Religious Discrimination; and Count 3: Age Discrimination.  Her ADA claims are brought under theories of failure to accommodate, "regarded as" disabled discrimination, and disparate treatment.  Her Title VII religious discrimination claims are under theories of failure to accommodate, disparate treatment, *quid pro quo* religious harassment, and hostile work environment. And her ADEA claim is for disparate treatment.  Lilly argues Swanson fails to adequately assert claims under any of these theories.  The Court addresses each in turn.

### A.    Count I: Disability Discrimination Claims under the ADA

Swanson alleges that Lilly discriminated against her when she was "subject to less favorable terms and conditions in her employment and when her accommodation request for the COVID-19 vaccine Mandate was denied." (Filing No. 15 at ¶ 64.)  She alleges that Lilly failed to accommodate her, refused to engage in the interactive process, regarded her as disabled, and

subjected her to disparate treatment.  In reviewing the adequacy of her Amended Complaint, the

subjected her to disparate treatment.  In reviewing the adequacy of her Amended Complaint, the

Court must determine if it alleges enough facts to state a claim for relief that is plausible on its

face.  *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 513-15 (2002) (holding an employment

discrimination complaint need not set forth a *prima facie* case of discrimination; only "a short and

plain statement of the claim showing that the pleader is entitled to relief.").

### 1.    <u>Failure to Accommodate</u>

The ADA prohibits an employer from discriminating against a "qualified individual" based

on a disability.  42 U.S.C. § 121112(a).  The ADA defines discrimination, in part, as "not making

reasonable accommodations to the known physical or mental limitations of an otherwise qualified

individual with a disability...unless [the employer] can demonstrate that the accommodation would

impose an undue hardship on the operation of the [employer's] business." *Id.* § 12112(b)(5)(A).

To establish a *prima facie* failure to accommodate claim under the ADA, a plaintiff must show

that: (1) the plaintiff was a qualified individual with a disability; (2) the defendant was aware of

the disability; and (3) the employer failed to reasonably accommodate the disability.  *EEOC v.*

*Sears, Roebuck & Co.,* 417 F.3d 789, 797 (7th Cir. 2005).

### a.    <u>The Amended Complaint Adequately Pleads Swanson was a Qualified Individual with a Disability</u>

The ADA defines a "qualified individual" as "an individual who, with or without

reasonable accommodation, can perform the essential functions of the employment position that

such individual holds or desires."  42 U.S.C. § 12111(8).  A disability is defined in part as "a

physical or mental impairment that substantially limits one or more major life activities of [an]

individual." *Id.* § 12102(1)(A).  "[M]ajor life activities include, but are not limited to, caring for

oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting,

bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A).

The Amended Complaint alleges that following a severe adverse reaction to the influenza vaccine, Swanson "experienced (and continues to experience) debilitating headaches/migraines that lasted from ½ a day to 3-days" that caused her to suffer from "impaired thinking, talking, nausea/GI issues, heart palpitations, extreme fatigue, and excruciating pain." (Filing No. 15 at ¶ 21.) Swanson's disability also substantially limited her "ability to think, be active, talk, interact with others, and it weakened her immune system." *Id.* at ¶ 24. Swanson has sufficiently pled the first element of a *prima facie* failure to accommodate claim.

### b.   The Amended Complaint Adequately Pleads Lilly was Aware of Swanson's Disability

An employer violates the ADA if it fails to provide "reasonable accommodations to the *known* physical or mental limitations" of an employee. 42 U.S.C. § 12112(b)(5)(A) (emphasis added). Swanson, "in addition to showing that she is a qualified individual with a disability, must show that the employer was aware of her disability and still failed to reasonably accommodate it." *Hoffman v. Caterpillar, Inc.,* 256 F.3d 568, 572 (7th Cir. 2001). The ADA imposes on an employee the "initial duty to inform the employer of a disability." *Beck v. Univ. of Wisc. Bd. of Regents*, 75 F.3d 1130, 1134 (7th Cir. 1996). In other words, an employer that has not been made aware of an employee's disability cannot be held liable for not accommodating the employee. *Id.* at 1134.

Lilly asserts that the Amended Complaint fails to allege that anyone at Lilly was made aware of any alleged disability (Filing No. 24 at 9). Lilly contends Swanson's medical accommodation request did not cite a disability, Swanson did not make anyone aware of her disabling side effects, and no one at Lilly had knowledge of Swanson's alleged Celiac Disease. *Id.*

at 9-12.  In support of its proposition, Lilly cites to several cases holding an "allergic reaction to a vaccination, *without more*, is not a "disability" under the ADA."  *See Innes v. Cty. of Warren*, No. 1:22-cv-00641, 2023 WL 3601237, at *10-12 (N.D.N.Y May 23, 2023) (emphasis added).  The Court notes that most cases cited by Lilly are not binding on this court.

In response, Swanson cites to *EEOC v. Sears, Roebuck & Co.*, in which the United States Supreme Court explained that "where notice is ambiguous as to the precise nature of the disability or desired accommodation, but it is sufficient to notify the employer that the employee may have a disability that requires accommodation, the employer must ask for clarification."  417 F.3d 789, 804 (7th Cir. 2005).  Swanson alleges the Amended Complaint properly pled that she initiated the interactive process as required by the ADA when she submitted a medical accommodation request and Lilly refused to engage, which intentionally left them unaware of her qualified disabilities.

As pled, the Court finds that Lilly was made aware of Swanson's alleged disability and any lack of awareness falls on Lilly.  The Amended Complaint explicitly alleges that "Swanson submitted a disability accommodation request under the Mandate" and "Swanson informed the Defendant that her medical provider had her consent to speak with Defendant and was ready to answer any and all questions Defendant had concerning Swanson's disability."  (Filing No. 15 at ¶¶ 26, 41.)  The Amended Complaint also alleges Swanson made several attempts to provide Lilly with additional information regarding her disabilities. (*See id.* at ¶ 43 ("Swanson attempted to fully inform Lilly of her disabilities in an effort to engage in the interactive process. Swanson even made her medical provider available for Lilly to speak with. Instead, Lilly ignored her attempts and denied her request.")).  Swanson has sufficiently pled the second element of a *prima facie* failure to accommodate claim.

**c.    The Amended Complaint sufficiently alleges that Lilly failed to reasonably accommodate Swanson's disability**

Under the ADA, an employer must make "reasonable accommodations" to a disabled employee's limitations, unless the employer can demonstrate that to do so would impose an "undue hardship." 42 U.S.C. § 12112(b)(5)(A).  Lilly argues that because Swanson "fails to allege that Lilly was aware of any qualifying disability, she fails to state a claim that Lilly failed to accommodate such disability."  (Filing No. 24 at 16.)  This Court disagrees.  The Amended Complaint alleges "Swanson was never given the opportunity to apply for an alternative position within Lilly that could accommodate her disability…" and "Defendant discriminated against Swanson on the basis of her disability by failing to engage in the interactive process in good faith and denying her reasonable accommodations."  (Filling No. 15 at ¶¶ 45, 65.)  At the motion to dismiss stage, these allegations are sufficient to survive a motion to dismiss.

The Court concludes that Swanson's Amended Complaint sufficiently pleads a failure to accommodate claim against Lilly and the motion to dismiss is **denied** as to the ADA failure to accommodate discrimination claim.

**2.    "Regarded As" Disability Discrimination**

The Amended Complaint alleges that Lilly "discriminated against [Swanson] based on her actual or perceived disability when she was subject to less favorable terms and conditions in her employment and when her accommodation request for the COVID-19 vaccine Mandate was denied." (Filing No. 15 at ¶ 64.)  Besides "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual", the ADA additionally defines "disability" as "being regarded as having such an impairment." 42 U.S.C. § 12102(1).

An employee is "regarded as" disabled if: the employer mistakenly believes the employee has a physical impairment that substantially limits one or more major life activities, or the

employer mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life activities. *Steffen v. Donahoe*, 680 F.3d 378, 745 (7th Cir. 2012) (emphasis omitted); *see also* 42 U.S.C. § 12102(3). Swanson argues Lilly violated the ADA when they "regarded her, and other unvaccinated employees, as having a disability under its Mandate." (Filing No. 52 at 14.) Vaccination status alone is not a disability. *Applegate v. St. Vincent Health, Inc.*, No. 1:22-CV-01097-JPH-MG, 2023 WL 3603975, at *3 (S.D. Ind. May 23, 2023). Rather, "[t]he decision to vaccinate or not to vaccinate is a personal choice, while a disability under the ADA is not something a person chooses." *Johnson v. Mount Sinai Hosp. Grp., Inc.*, 2023 WL 2163774, at *6 (E.D.N.Y. Feb. 22, 2023) (citing *Speaks v. Health Sys. Mgmt., Inc.*, 2022 WL 3448649, at *5 (W.D.N.C. Aug. 17, 2022)). The possibility of the Covid vaccine harming Swanson is not considered a disability either. The "regarded as" prong does not cover situations where an employer views an applicant as at risk for developing a qualifying impairment in the future. *See Shell v. Burlington N. Santa Fe Ry. Co.*, 941 F.3d 331, 336 (7th Cir. 2019) (finding that future impairments cannot be considered an actual or perceived disability).

Moreover, since Swanson is alleging a "regarded as" claim of disability, she also needed to demonstrate Lilly regarded her impairment as *substantially limiting*. *See Mack v. Great Dane Trailers*, 308 F.3d 776, 782 (7th Cir. 2002) ("So if the condition that is the subject of the employer's belief is not substantially limiting, and the employer does not believe that it is, then there is no violation of the ADA under the "regarded as" prong of the statute."). To the extent Swanson is declaring unvaccinated status as an impairment, the Amended Complaint does not allege Lilly considered unvaccinated employees to be substantially limited in any major activity, importantly work. The allegations in the Amended Complaint demonstrate the opposite – that Lilly allowed unvaccinated, exempted, employees to still work albeit in a non-customer facing role. (*See* Filing

No. 15 at ¶ 44). Thus, Swanson's unvaccinated status cannot support a claim of disability discrimination and Lilly's motion to dismiss as to the "regarded as" claim is **granted**.

### 3.   <u>Disparate Treatment</u>

Lilly argues that Swanson has failed to state a disability disparate treatment claim in violation of the ADA (Filing No. 24 at 8). In her response brief, Swanson waives and voluntarily dismisses her disparate treatment claim (Filing No. 52 at 2 n. 3 (citing Filing No. 50)). Lilly's motion to dismiss the ADA disparate treatment claim is **granted**.

## B.   <u>Count II: Religious Discrimination</u>

Swanson alleges that Lilly discriminated against her "on the basis of her sincerely held religious beliefs by conditioning continued employment upon the abandonment of her sincerely held religious beliefs in order to complying [sic] with the Defendant's Vaccine Mandate." (Filing No. 15 at ¶ 72.) She alleges that Lilly failed to accommodate her, subjected her to disparate treatment, partook in *quid pro quo* harassment, and created a hostile work environment.

### 1.   <u>Failure to Accommodate</u>

Title VII makes it unlawful to discharge any individual because of their religion. 42 U.S.C. § 2000e-2. "The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." *EEOC v. United Parcel Serv.*, 94 F.3d 314, 317 (7th Cir. 1996). These provisions of Title VII prohibit an employer from intentionally discriminating against an employee based on the employee's religion and require an employer to make reasonable efforts to accommodate the religious practices of employees unless doing so would cause the

employer undue hardship.  *See Reed v. Great Lakes Cos.,* 330 F.3d 931, 934–35 (7th Cir. 2003) (citations omitted).

To survive dismissal on a failure to accommodate religion claim, a plaintiff must show that: (1) a bona fide religious practice conflicts with an employment requirement; (2) they called the religious practice to his employer's attention; and (3) that the religious practice was the basis for an adverse employment decision. *EEOC*, 94 F.3d at 317. Lilly argues that Swanson cannot proceed with a failure to accommodate claim because she failed to request an accommodation. Additionally, even if Swanson had requested an accommodation, Lilly argues the Amended Complaint fails to state a *prima facie* case of religious discrimination.

As noted above, at this stage of the proceedings, Swanson is only required to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512.  The cases cited by Lilly are unconvincing at this point because they involve decisions made at the summary judgment stage, not the motion to dismiss stage.  *See Stelter v. Wisconsin Physicians Serv. Ins. Corp.*, 650 F.3d 488 (7th Cir. 2020); *Schmidt v. Watertronics, LLC*, No. 20-cv-1915-pp, 2022 WL 5242714 (E.D. Wis. Sep. 30, 2022).  The Amended Complaint adequately outlines that Swanson was a practicing Christian Baptist, who requested a religious accommodation[2] to Lilly's Mandate because she believed the Covid vaccine used aborted fetal cells, and her accommodation was denied.  These allegations are sufficient to state a claim upon which relief might be granted so Lilly's motion to dismiss Swanson's Title VII failure to accommodate claim is **denied**.

---

[2] The Court notes the Amended Complaint is ambiguous as to whether Swanson requested a religious accommodation or merely spoke to McFreen about wanting to submit a religious accommodation. *Compare* Filing No. 15 at ¶ 32 ("…Swanson spoke to Anu McFreen ("McFreen") her supervisor, about submitting a religious accommodation…"), *with id.* at ¶ 33 ("In response, McFreen stated that because she submitted a religious accommodation beyond the deadline…").  However, at this stage, the Court construes the Amended Complaint in the light most favorable to Swanson.

2.      **<u>Disparate Treatment</u>**

Lilly argues that Swanson has failed to state a disparate treatment claim in violation of Title VII (<u>Filing No. 24 at 16</u>).  Swanson waives this claim in her response brief (<u>Filing No. 52 at 2</u> n. 3 (citing <u>Filing No. 50</u>)).  Lilly's motion to dismiss Swanson's Title VII disparate treatment claim is **granted**.

3.      **<u>*Quid Pro Quo* and Hostile Work Environment</u>**

In a reply brief section titled "Plaintiff Cannot Raise and Preserve New Religious "Harassment" Claims in Her Opposition", Lilly discusses Swanson's Title VII *quid pro quo* and hostile work environment claims (<u>Filing No. 55 at 13</u>).  Lilly argues that Swanson has raised these claims for the first time in a footnote in her response brief (*see,* <u>Filing No. 52 at 1</u> n.2) and her "one-off, passing references to the terms "*quid pro quo*" and "hostile work environment" in the Amended Complaint" were not enough to preserve additional religious harassment claims.  (<u>Filing No. 55 at 13</u>.)  It is Swanson's position that Lilly did not seek dismissal of her Title VII *quid pro quo* and hostile work environment claims. Instead, "Lilly only argued that Swanson failed to, "state a Title VII religious discrimination claim" and then moved to dismiss Swanson's, "disparate treatment and failure to accommodate on the basis of religion under Title VII" (<u>Filing No. 52 at 1</u> n. 2); thus, Lilly's opportunity to do so now has been waived.

The Court is not persuaded by Swanson's argument.  Although Lilly failed to directly address Title VII *quid pro quo* and hostile work environment in their memorandum of law, in their Motion to Dismiss they move "this Court to dismiss Plaintiff Rachael Swanson's Amended Complaint (Dkt. #15) with prejudice *in its entirety* on the grounds that Plaintiff has failed to state a claim on which relief can be granted". (<u>Filing No. 23</u>). (emphasis added). For the sake of completeness and due diligence, Lilly should have discussed Swanson's purported *quid pro quo*

and hostile work environment claim in its memorandum in support of their motion to dismiss. But the Court agrees with Lilly, that as pled, the Amended Complaint woefully fails to state a claim for *quid pro quo*" and "hostile work environment" and the conclusory statement could reasonably have been mistaken as a mere reference.

A violation of Title VII may be predicated on either of two types of harassment: the conditioning of employment benefits upon certain employee conduct ("*quid pro quo*"); and creating a hostile or offensive working environment ("hostile work environment"). *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 57 (1986). As this Court has previously noted, *quid pro quo* cases typically involve sexual harassment—the conditioning of benefits on sexual favors. *See, e.g.*, *Van Gorp. v. Eli Lilly & Co.*, 2023 WL 5486052, at *6 (S.D. Ind. Aug, 24, 2023). Here, Swanson alleges only that:

> "Defendant discriminated against Plaintiff on the basis of her sincerely held religious beliefs by conditioning continued employment upon the abandonment of her sincerely held religious beliefs in order to complying [sic] with the Defendant's Vaccine Mandate. Defendant's "quid pro quo" harassment based on the Plaintiff's religious beliefs created a hostile work environment for the Plaintiff which constitutes unlawful discrimination under Title VII of the Civil Rights Act of 1964."

(Filing No. 15 at ¶ 72). This conclusory statement fails to adequately plead a claim.

Lilly points out that courts in this District have specifically considered and rejected the notion that "*quid pro quo*" harassment can be pled through "[a]llegations that, absent an accommodation, a neutral mandate forced Plaintiffs to choose between their deeply held beliefs and their continued employment." *See, e.g.*, *Van Gorp.* at *7 (S.D. Ind. Aug, 24, 2023); *see also Clark v. Eli Lilly & Co.*, No. 22-cv-1655 (S.D. Ind. Aug. 3, 2023), Dismissal at 6-7. Lilly argues persuasively that Swanson does not allege any "'intimidating,' or even neutral, comments from anyone at Lilly about her religion, or about anyone else's religion" and "she does not claim that

anyone at Lilly imposed the vaccination policy to pressure her to conform to particular religious views; and, as a basic matter, she fails to even identify a purported harasser." (Filing No. 55 at 14.)

Because *quid pro quo* claims are Title VII claims, and "because Title VII is premised on eliminating *discrimination*," a plaintiff asserting a *quid pro quo* harassment claim must show that she was harassed on the basis of her protected class. *Holman v. Indiana*, 211 F.3d 399, 403 (7th Cir. 2000) (emphasis in original). Absent that discriminatory animus, there is no discrimination, and the plaintiff has no cause of action under Title VII. *Cf. Holman*, 211 F.3d at 403 ("Title VII does not cover the 'equal opportunity' or 'bisexual' harasser[—]because such a person is not *discriminating* on the basis of sex. He is not treating one sex better (or worse) than the other; he is treating both sexes the same (albeit badly)." (Emphasis in original)).

There are no factual allegations in the Amended Complaint indicating that Lilly enacted or enforced the Mandate based on Swanson's Christian Baptist religion or with any discriminatory animus. As this Court has previously determined, allegations that, absent an accommodation, a neutral mandate forced plaintiffs to choose between their deeply held beliefs and their continued employment does not amount to *quid pro quo* harassment. *See Van Gorp at* \*8.

Swanson's hostile work environment claim fares no better. To assert a Title VII hostile work environment claim, a plaintiff must allege: (1) she was subject to unwelcome harassment; (2) the harassment was based on her protected characteristic; (3) the harassment was severe or pervasive so as to create a hostile or abusive working environment; and (4) there is basis for employer liability. *See Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 426 (7th Cir. 2004). Swanson has not alleged that Lilly acted with discriminatory animus, she has not plausibly alleged severe or pervasive harassment to support a hostile work environment claims and she has not

plausibly alleged harassment based on her Christian Baptist religious beliefs.  Like her *quid pro quo* claim, Swanson's hostile work environment claims cannot survive without a plausible showing of discriminatory intent by Lilly.  Accordingly, Lilly's motion to dismiss Swanson's *quid pro quo* religious harassment claim and hostile work environment claim is **granted**, but this claim is dismissed **without prejudice.**

## C.   Age Discrimination

### 1.   ADEA Claims for Failure to Promote in 2019 and 2020

Lilly moves for judgment on the pleadings as to Swanson's failure to promote claims (Filing No. 24 at 21).  Lilly asserts Swanson failed to exhaust administrative remedies because she failed to mention the denial of promotions in her Equal Employment Opportunity Commission Charge.  *Id.*  Swanson clarifies that she is not seeking relief under these sets of facts and instead provided these details to add context to her age discrimination claim for disparate treatment (Filing No. 52 at 1, n.1).  Therefore, Lilly's motion for judgment on the pleadings as to any claims of age discrimination arising from failure to promote is **granted**.

### 2.   ADEA Disparate Treatment Claim for Termination in 2021

The ADEA makes it unlawful "for an employer to fail or refuse to hire or to discharge an individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To establish a *prima facie* case of age discrimination under *McDonnell Douglas*, Swanson must show that (1) she was a member of the protected class (age forty or older); (2) she was discharged or demoted; (3) at the time of their discharge or demotion, she was performing her job at a level that met her employer's legitimate expectations; and (4) following her discharge or demotion, she was replaced by someone substantially younger. *McDonnell Douglas Corp. v.*

18

*Green,* 411 U.S. 792, 802 (1973); *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 310 (1996); *Hartley v. Wis. Bell, Inc.*, 124 F.3d 887, 893 (7th Cir. 1997) (considering a ten-year difference in age to be "substantial.").  However, to adequately plead a claim of age discrimination, Swanson is only required to allege much less.

The *prima facie* standard set in *McDonnell Douglas* is an evidentiary standard, not a pleading requirement.  *Swierkiewicz*, 534 U.S. at 510.  To survive a motion to dismiss under Rule 12(b)(6), a plaintiff is not required to allege facts corresponding to every element of a *prima facie* case of age discrimination.  *Id.*  Plaintiffs are only required to meet the pleading standard set forth by Federal Rule of Civil Procedure 8(a)(2).  *Id.* at 512.  Rule 8(a)(2) only requires a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).

Swanson was a member of the protected class at all relevant times.  At the time of termination, she was 50 years old.  It is undisputed that Swanson was terminated.  It is also undisputed that at the time of her termination, Swanson was meeting Lilly's legitimate expectations.  Furthermore, in the Amended Complaint, Swanson alleges that she was replaced by someone substantially younger than her.  Lilly argues the Amended Complaint states no basis upon which Swanson could know this information.  However, Swanson's response in opposition elaborates on the ages of the employees who replaced her (*see* Filing No. 52 at 8); *see Geinosky v. City of Chicago*, 675 F.3d 743, 745 n. 1 (7th Cir. 2012) ("A party appealing a Rule 12(b)(6) dismissal may elaborate on [her] factual allegations so long as the new elaborations are consistent with the pleadings.").  At the time of the Mandate, Andrew Bauman is believed to have been 38 and Katherine Thrasher is believed to have been 32.  *Id.*  The Court concludes that Swanson has pled enough facts for a plausible age discrimination claim.

Lilly's request for dismissal of Swanson's ADEA claim for failure to state a claim upon which relief can be granted is **denied**.

## IV.   CONCLUSION

For the reasons stated above, Lilly's Motion to Dismiss (Filing No. 23) is **GRANTED in part and DENIED in part**.  Swanson's disparate treatment claims under the ADA and Title VII ADA claim for "regarded as" disability discrimination are **dismissed with prejudice**. Equity provides that her Title VII *quid pro quo* harassment claim, and her Title VII hostile work environment claim – **are dismissed without prejudice,** and Swanson is granted leave to file a Second Amended Complaint concerning these claims **within 14 days of the date of this Order** if that filing will not be futile. If nothing is filed by the deadline, this matter will proceed only on Swanson's ADA failure to accommodate claim, Title VII failure to accommodate claim, and ADEA discrimination claim.

**SO ORDERED.**

Date:  1/10/2024

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Andrew Dutkanych, III
BIESECKER DUTKANYCH & MACER LLC (Indianapolis)
ad@bdlegal.com

Taylor Jon Ferguson
BIESECKER DUTKANYCH & MACER, LLC
tferguson@bdlegal.com

Benjamin M. Ostrander
WINSTON STRAWN LLP
bostrander@winston.com

David D. Leishman
MCGUIRE WOODS LLP (Chicago)
dleishman@mcguirewoods.com

Kara Elizabeth Cooper
WINSTON STRAWN LLP (Chicago)
kecooper@winston.com

Michael P. Roche
WINSTON STRAWN LLP
mroche@winston.com

Sarah Kreger
WINSTON STRAWN LLP (Chicago)
skreger@winston.com